IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DYLAN RICHARD JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 24-cv-2753-DWD |
| CHAD JENNINGS, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| JOHN/JANE DOE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Dylan Richard Jones, a former inmate of the Illinois Department of Corrections (IDOC)[1], brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Robinson Correctional Center (Robinson). (Doc. 1). Although Plaintiff is represented by counsel, he is currently incarcerated, so his complaint is still subject to review under Section 1915A. *See* 28 U.S.C. § 1915A(a)-(b). Plaintiff's original and first amended complaints (Docs. 1, 6) were dismissed as insufficient to state a claim. (Docs. 4, 19). The matter is now before the Court on Plaintiff's second amended complaint (Doc. 20), and Defendant Jennings' Motion to Dismiss (Doc. 21). For reasons explained in this Order, this matter will now be dismissed entirely for failure to state a claim.

---

[1] Plaintiff's counsel indicated within the text of the complaint that he believes his client is currently detained at the Indiana Department of Corrections Reception and Diagnostic Center. (Doc. 1, ¶ 5). .

## The Second Amended Complaint

This lawsuit concerns a knee injury that Plaintiff allegedly sustained while at Robinson. The Court dismissed the original and first amended complaints because Plaintiff alleged deliberate indifference of medical providers and Warden Jennings to his knee injury, but he failed to clearly indicate how he had communicated his needs to these individuals, or who specifically had failed to provide adequate care. The second amended complaint is no better. In fact, the second amended complaint appears to be almost a verbatim copy of the first amended complaint.[2] A side-by-side comparison of the first and second amended pleadings reveals that almost nothing is different. As far as the Court can tell, the sole new factual material comes in paragraphs 168-171, and concerns an alleged cost-cutting policy by Wexford Health Sources, Inc.. (Doc. 20 at ¶¶ 168-171). The allegations read:

> 168. The practice of failing to provide adequate medical treatment despite its obvious necessity to those in custody of Robinson Correctional Center is widespread and performed by numerous agents of Wexford Health Sources, Inc. Additionally, the cost-cutting practices described herein permeate almost all of Wexford Health Sources Inc.'s medical treatments. Many other persons held in the custody of Robinson Correctional Center have been denied adequate medical treatment as a consequence of Wexford Health Sources, Inc.'s inadequate practices.
>
> 169. Wexford Health Sources, Inc.'s policy, practice, or policymaking official caused Dylan's injuries. Had Wexford Health Sources, Inc. not implemented cost-cutting procedures in its medical practices, Dylan would have received adequate treatment to his knee. Instead, Wexford Health Sources, Inc., consistent with its policy, practice, or policymaking official, disregarded Dylan's injury and allowed it to

---

[2] Local Rule 15.1(b)(2) requires that all new material in an amended pleading be delineated by underlying new material or signifying which paragraphs are new. Plaintiff's amended complaint did not adopt this format.

> worsen, continue to cause pain, and cause greater, subsequent injuries as a result. But for Wexford Health Sources, Inc.'s policy, practice, or policymaking official, Dylan would not have suffered the injuries that he did.
>
> 170. Numerous agents of Wexford Health Sources, Inc. failed to provide adequate medical care to Dylan or outright denied Dylan medical treatment.
>
> 171. Wexford Health Sources, Inc.'s inadequate treatment of Dylan's injury spanned an extensive period time and was not limited to isolated incidents. Wexford Health Sources, Inc. repeatedly denied Dylan medical treatments.

(Doc. 20 at ¶¶ 168-171).

> The enumerated claims in the Second Amended Complaint are:
>
> Claim 1:   Eighth Amendment violation against John or Jane Does who allegedly ignored Plaintiff's requests for care in January of 2023;
>
> Claim 2:   Eighth Amendment violation against John or Jane Does who allegedly failed to provide ongoing care after Plaintiff's first attempts to seek care in January of 2023;
>
> Claim 3:   *Monell* liability claim against Wexford for delaying care, being non-responsive to requests for care, carrying out a policy set by Defendant Jennings, or carrying out a cost-cutting policy;
>
> Claim 4:   Supervisory liability claim against Defendant Jennings for supervising Wexford and the John/Jane Doe individual providers, and for either directing or condoning their cost-cutting methods and the inadequate care provided.

(Doc. 20). These claims are largely consistent with the first amended complaint, although, Plaintiff did not attempt to replead his *Monell* claim against Defendant Jennings. The allegations made in the enumerated claims contain a bit more detail for Claims 3 and 4 than they did in earlier versions of the complaint. For example, the claim against Wexford

now explains that it is premised on alleged delays in care, non-responsiveness to requests for care, Wexford's adherence to a *Monell* policy allegedly dictated by Jennings, and cost-cutting. (Doc. 20 at ¶¶ 194-199). The first amended complaint alleged only that Wexford engaged in cost-cutting whenever it could do so without risking the patient's life. (Doc. 6 at ¶ 176). Claim 4 against Jennings now alleges that Jennings personally directed Wexford to implement cost-cutting, or he personally knew that cost-cutting was being used to Plaintiff's detriment. (Doc. 20 at ¶¶ 207-209). The earlier pleading alleged only that Jennings approved, condoned, or turned a blind-eye to misdeeds. (Doc. 6 at ¶¶ 185-188).

## Analysis

As the Court has now explained twice in this case, to survive preliminary review under Section 1915A, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and which includes "enough facts to state a claim to relief that is plausible on its face." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Plaintiff is required to associate specific defendants with specific claims so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *Id.* at 555. Further, because Plaintiff brings his claims under Section 1983, he must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused

or participated in a constitutional deprivation."). Furthermore, a generic assertion that one or more defendants engaged in constitutional violations is not adequately specific. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). The standard of review under § 1915A is consistent with the standard of review for a motion to dismiss under Rule 12(b)(6).

Claims 1 and 2 remain deficient. The Court has now repeatedly emphasized that a claim cannot be pled against an ambiguous group of John or Jane Doe defendants because the allegation that "one or more defendants harmed me" is simply not enough under § 1983. *Brooks*, 578 F.3d at 580. Other than making minor semantic edits to the factual allegations about care, Plaintiff has done nothing to bolster these claims. Counsel appears to point to his difficulties obtaining Plaintiff's master file to excuse this lack of detail, but the lack of detail is inexcusable. The Court did not expect counsel to individually identify each provider by name to plead a sufficient claim, but as it explained upon review of the original complaint, it at least needed some level of detail such as a description of who Plaintiff saw for an x-ray, when he was seen, and how often and to whom he made requests for follow-up care. (Doc. 4 at 6). This sort of basic descriptive information could be gleaned from a conversation between counsel and the Plaintiff and does not require the receipt of medical records. Thus, the Court stands by the determination that Claims 1 and 2 are insufficient as pled, and that they are again subject to dismissal for failure to state a claim.

Claim 4, against Defendant Jennings, in his individual capacity for supervisory liability is also still deficient as pled. Plaintiff has yet to explain how Defendant Jennings was made personally aware of any of the issues associated with his medical situation.

For example, he does not allege that he wrote Defendant Jennings letters or kites about his situation, or that he spoke to Jennings during a gallery tour. Plaintiff doubles down on his allegations that Jennings hired Wexford and instructed them to cut-costs or knew that they were doing so at the expense of inmate health and failed to intervene, but these assertions are threadbare and speculative. Plaintiff has yet to establish in any plausible fashion that Jennings was even aware of his knee injury or his pleas for care. The most basic element of any § 1983 claim is that a plaintiff establish personal knowledge and involvement of a defendant, but Plaintiff has not put forth even the most minimal information in his pleading that demonstrates Jennings knew about his issues, and acted knowing that he might be forcing Plaintiff to endure prolonged suffering or a serious injury. Without this basic link, Plaintiff's allegations are mere speculation.

Finally, Plaintiff has attempted to replead his claim against Wexford. As the Court previously explained, Wexford may be held liable for a constitutional harm caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *See e.g.*, Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 653 (7th Cir. 2021). "In applying *Monell* and avoiding *respondeat superior* liability, one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." Id. at 654. One key to pleading and proving a *Monell* claim against Wexford is that a Plaintiff establish a causal link between the alleged policy and the harm he sustained. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (the plaintiff must show that the municipal action was the 'moving force' behind the federal-

rights violation, this "rigorous causation standard" requires a direct causal link between the challenged municipal action and the violation of the plaintiff's rights).

Here, Plaintiff is still vague about what even caused him harm. He says it was policy, custom, or possibly a mandate by policymaker Jennings. (Doc. 20 at ¶ 197). He still says generically that the problem was cost-cutting, either of Wexford's own accord or as directed by Jennings. It is not apparent why the very existence of a mandate to cut-costs would be unconstitutional on its face. When a challenged policy is not unconstitutional on the face, the plaintiff needs evidence that the problem is widespread and pervasive, and that it definitively caused the harm he suffered. *See e.g., Dean*, 18 F.4th 236 ("a plaintiff seeking to hold a municipality liable for a facially lawful policy generally must prove a pattern of similar constitutional violations resulting from that policy"). Plaintiff alleges in generic terms that he and many other inmates at Robinson experienced deficient care, but he does not give any examples other than his own issues. He also does not explain how his own problems accessing care were a direct by-product of cost-cutting, as opposed to other problems. For example, he does not allege that a provider told him he could not be sent for an MRI because it was too expensive, nor does he point to any evidence that Wexford was asked for approval to send him off for an MRI, but refused on the premise of cost. The allegations in Plaintiff's complaint about cost-cutting or deficient care at Wexford or Jenning's direction are nothing more than pure speculation and conjecture.

In an attempt to bolster his claim against Wexford, Plaintiff cites to *Neely v. Randle*, 2013 WL 3321451 (N.D. Ill. 2013) for the proposition that "allegations of routine delays

and denials of medical care and nonresponsiveness to requests for care…are sufficient to state claims under *Monell*[.]" But the portion of that quote that counsel omitted is the most significant. In full, the quote reads, ""allegations of routine delays and denials of medical care and nonresponsiveness to requests for care, *combined with the more specific factual allegations regarding how he was dealt with at the two institutions,* are sufficient to state claims under *Monell*." Here, Plaintiff's complaint utterly lacks specific factual allegations about how he was dealt with at Robinson. He does not tell the Court how his injury occurred, who he first alerted, the methods he used to contact the medical unit, how often he attempted to contact the medical unit, how many providers he saw at the medical unit, or what they told him about why he would not receive further medical care. If anything, the citation to the *Neely* case is more harmful to Plaintiff's efforts than it is helpful, because the decision when read in full shows exactly the sort of information Plaintiff could have included in his complaint but did not. It also demonstrates that *respondeat superior* liability and efforts to hold a warden liable for generic high-level are not viable. On the whole, Plaintiff's complaint is markedly weaker than *Neely's* and it is certainly insufficient to state a claim against Wexford under *Monell*.

      The Court has now reviewed three pleadings in this case. While it is not entirely implausible that there is some set of facts here that could amount to a valid claim, the Court will not tirelessly expend judicial resources to review pleadings in this case that differ very little from one another. This is the third complaint that has utterly failed to state a valid claim, so this case will now be dismissed without prejudice for failure to state a claim. Typically, a suit filed by an inmate that is dismissed for failure to state a claim

earns the inmate a strike under 28 U.S.C. § 1915(g), but the undersigned does not view this dismissal as earning Plaintiff a strike because the poor pleading comes from counsel, and not from Plaintiff himself.

### Disposition

Plaintiff's Motion to Waive Service (Doc. 5) is **GRANTED**, although it appears that this document is actually just a proof that Defendant Jennings waived service and is not a motion requiring court action.

For the foregoing reasons, Plaintiff's second amended complaint (Doc. 20) is subject to dismissal under 28 U.S.C. § 1915A for failure to state a claim. In this respect, Warden Jennings' Motion to Dismiss (Doc. 21) is also **GRANTED**. Given that this was the second amended complaint, the Court now finds it appropriate to dismiss this action in full under 28 U.S.C. § 1915A for failure to state a claim. The Clerk of Court is **DIRECTED** to enter judgment and to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: September 18, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge